UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BEATA KUREK and CHRISTIAN KUREK, | ) ) ) | |
| Plaintiff(s), | ) ) | No. C 10-2155 BZ |
| v. | ) ) | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| AMERICA'S WHOLESALE LENDER, et al., | ) ) ) | |
| Defendant(s). | ) ) ) | |

Before the Court is defendant Countrywide Home Loans' (dba America's Wholesale Lender) motion for summary judgment. Docket No. 51. For the reasons explained below, defendant's motion is **GRANTED**.[1]

Plaintiffs' first cause of action alleges that defendant did not follow California's procedures for nonjudicial foreclosures and the notice of default should therefore be set aside. The crux of this claim challenges the role of Mortgage Electronic Registration Systems, Inc. (MERS), named as

---

[1] The parties have consented to the Court's jurisdiction for all proceedings, including entry of final judgment under 28 U.S.C. § 636(c).

1

beneficiary under the Deed of Trust which secured the financing of plaintiffs' property at 115 Ewing Terrace in San Francisco.  This is not an issue of first impression — courts throughout the country, including California, have recently ruled on challenges to MERS' role in the foreclosure process. Plaintiffs ask me to follow decisions from bankruptcy courts and rulings from other jurisdictions on this issue. Defendant, on the other hand, argues that summary judgment must be granted because the California courts that have addressed this question, have found that the role MERS played in this foreclosure process is acceptable under California law.  I agree with defendant.

The recent appellate decisions in Gomes v. Countrywide Home Loans, Inc., 192 Cal.App.4th 1149 (2011), and Ferguson v. Avelo Mortg., LLC, 195 Cal.App.4th 1618 (2011), 2011 WL 2139143, support defendant.  In Gomes, the borrower alleged that the promissory note he executed to obtain his loan was sold on the secondary mortgage market and therefore MERS and its agents did not have the authority to initiate foreclosure proceedings.  192 Cal.App.4th at 1151-52.  The Court rejected this argument, holding that the trial court properly sustained defendants' demurrer because the borrower's Deed of Trust explicitly provided MERS with the authority to initiate foreclosure proceedings.  Id. at 1157-58 ("we conclude that Gomes's first and second causes of action lack merit for the independent reason that by entering into the deed of trust, Gomes agreed that MERS had the authority to initiate a foreclosure").  Ferguson reaffirmed the ruling in Gomes and

2

similarly found that the borrower had acknowledged MERS' authority by signing the Deed of Trust which provided MERS with the power to initiate foreclosure proceedings. 2011 WL 2139143 at *4-5 (affirming the trial court's decision to sustain defendants' demurrer where MERS had assigned its beneficial interest under the Deed of Trust to a new lender and foreclosure procedures were initiated by a substituted trustee). Here, plaintiffs' position that MERS "has no standing to initiate foreclosures" because it "could not transfer the beneficial interest of the Deed of Trust to another" without owning the note (Opposition at 3-4) is incorrect since, as in Gomes and Ferguson, plaintiffs' Deed of Trust authorized MERS to act as a beneficiary as well as initiate any foreclosure proceedings. See Defendant's Request for Judicial Notice (RJN), Ex. B at 2-4.[2]

Plaintiffs did not distinguish or even address Gomes and Ferguson in their opposition. Instead, they rely on decisions from bankruptcy courts and out-of-state jurisdictions which found problems with the role of MERS in foreclosures. But, as Gomes and Ferguson explained, cases from outside this jurisdiction are not applicable if they do not apply California nonjudicial foreclosure law. See Gomes, 192 Cal.App.4th at 1156-57 ("If, by citing these cases, Gomes means to argue that MERS lacks standing in California to

---

[2] Defendant asks me to take judicial notice of 16 documents filed in connection with its motion for summary judgment, such as the Deed of Trust for 115 Ewing Terrace. Docket No. 53. Since plaintiffs did not object to this request, and they do not appear to contest the factual content of the documents, the request is **GRANTED** to the extent that the documents are cited in this ruling.

1 initiate a nonjudicial foreclosure, the argument is without
2 merit because under California law MERS may initiate a
3 foreclosure as the nominee, or agent, of the noteholder.  As
4 we have explained, Civil Code section 2924, subdivision (a)(1)
5 states that a "trustee, mortgagee, or beneficiary, *or any of*
6 *their authorized agents*" may initiate the foreclosure
7 process").  The nonbinding bankruptcy decisions from
8 California cited by plaintiff (e.g., In re Walker and In re
9 Salazar), have similarly been rejected or distinguished.  See
10 Ferguson, 2011 WL 2139143 at n. 4 ("Even if we interpret In re
11 Walker to mean that MERS had no beneficial interest to assign
12 to respondent, this argument was explicitly rejected in
13 [Gomes], with which we agree."); Bogosian v. CR Title
14 Services, Inc., 2011 WL 2039368 at *2 (N.D. Cal. 2011)(in
15 denying plaintiffs' request for a temporary restraining order
16 to stop the foreclosure sale, the Court followed Gomes and
17 explained that the "Bankruptcy Court which decided the case
18 cited by Plaintiffs [In re Salazar], appears in the minority"
19 and "Plaintiffs have offered no compelling reason for this
20 Court to depart from the conclusions of its predecessors.")[3]

---

[3]   In re Salazar, 448 B.R. 814, (S.D.Cal. 2011), is readily distinguishable.  The disclosure there was initiated by US Bank, as assignee of MERS, the initial beneficiary under the Deed of Trust.  Salazar held that US Bank "as the foreclosing assignee was obligated to record its interest before the sale despite MERS' initial role" by California Civil Code § 2932.5.  Id. at 824.  Because MERS was not the beneficiary at the time of foreclosure, the bankruptcy court distinguished the holding in Gomes that MERS had authority to foreclose.  While there is dicta in Salazar which can be read as questioning MERS' authority to nonjudicially foreclose, this Court is bound to follow the holdings of Gomes and Ferguson and not the dicta in Salazar.  Vestar Development II, LLC v. General Dynamics Corp., 249 F.3d 958, 960 (9th Cir. 2001)("federal courts are bound by

4

Thus, California courts, which are controlling, have rejected plaintiffs' argument that, unless it owns the note, MERS has "no standing" to initiate the foreclosure proceedings. I follow these courts and **GRANT** defendant's motion on plaintiffs' first cause of action. Because plaintiffs have failed to raise a genuine issue for trial that defendant did not abide by California's nonjudicial foreclosure laws, I do not address the moot issue of whether plaintiffs should or could tender the outstanding indebtedness.

Plaintiffs' remaining cause of action alleges that defendant violated California's Unfair Competition Law codified under California Business and Professions Code § 17200 (Section 17200). Section 17200 prohibits "any unlawful, unfair, or fraudulent business act or practice." Kwikset Corp. v. Superior Court, 51 Cal.4th 310, 320 (2011). Because Section 17200 is written in the disjunctive, it affords relief for all three types of unfair competition. Pastoria v. Nationwide Ins., 112 Cal.App.4th 1490, 1496 (2003).

Plaintiffs' only allegation of an unlawful practice is predicated on its first cause of action that the notice of default was improper. Having granted defendant summary judgment that the notice was proper, plaintiffs can no longer

---

decisions of the state's highest court. In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance. However, where there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts.")

5

1  predicate a claim of unlawful conduct based on the notice.
2  See <u>Nool v. HomeQ Servicing</u>, 653 F.Supp.2d 1047, 1056 (E.D.
3  Cal. 2009)("The viability of a claim under [Section 17200]
4  depends on the viability of an underlying claim of unlawful
5  conduct").  Because plaintiffs do not allege that defendant is
6  liable for a fraudulent business practice, defendant's Section
7  17200 liability turns on whether plaintiffs have raised a
8  triable issue that defendant committed an unfair practice.
9      Plaintiffs contend that defendant is liable for the
10 following "unfair" business practices: (1) acting in its own
11 interest by issuing the loan in gross disregard to plaintiffs'
12 ability to repay it, including not verifying plaintiffs'
13 monthly income; (2) receiving unjust benefits by reselling the
14 loan to other investors; (3) increasing plaintiffs' monthly
15 loan payment amount.  As support for these allegations,
16 plaintiffs have submitted evidence that (1) plaintiffs'
17 monthly income at the time of the loan was $3000.00 rather
18 than the $28,555.00 listed on their loan application; (2) the
19 underwriting conditions of the loan required that plaintiffs'
20 monthly income be verified, which was not done; and (3)
21 defendant wrote plaintiffs a letter explaining that their
22 monthly loan payment may increase from $3,130.21 to
23 $9,192.18.
24     The arguments raised by plaintiffs and their supporting
25 evidence all fail to raise an issue for trial under the unfair
26 practices prong.  In <u>Cel-Tech Communications, Inc. v. Los
27 Angeles Cellular Telephone Company</u>, the Court held that in
28 actions where competitors allege anticompetitive practices,

6

1  any finding of unfairness under Section 17200 must "be
2  tethered to some legislatively declared policy or proof of
3  some actual or threatened impact on competition."  20 Cal.4th
4  163, 186-76 (1999).  Although the California Supreme Court has
5  not directly addressed the definition of unfair for consumer
6  claims under Section 17200, multiple courts have held that
7  such claims for unfairness must similarly be tethered to a
8  legislative policy in order to be actionable.  See Van Slyke
9  v. Capital One Bank, 2007 WL 3343943 at *11 (N.D. Cal.
10 2007)("Although the California Supreme Court did not reach the
11 issue of consumer cases, the rationale of Cel-Tech nonetheless
12 compels the conclusion, at least in this Court's judgment,
13 that the unfairness prong must also be tethered to some
14 legislative policy; otherwise the courts will roam across the
15 landscape of consumer transactions picking and choosing which
16 they like and which they dislike); Simila v. American Sterling
17 Bank, 2010 WL 3988171 at *6 (S.D. Cal. 2010)(discussing the
18 division among California courts with respect to the
19 application of the tethering and balancing tests under the
20 unfair prong and finding that the tethering test is "more in
21 line with the California Supreme Court's reasoning in Cel-
22 Tech").  In Simila, the borrowers made similar allegations,
23 claiming that their lender brokered, executed, and serviced
24 their loan without regard to their income, and burdened them
25 with a higher interest loan with more expensive payments even
26 though it had promised the loan would be affordable.  Id.  The
27 Simila court dismissed these claims because none of them were
28 tethered to any legislative policy.  Id.  Plaintiffs have also

1  not pointed to any legislative policy that supports their
2  claims that defendant's business practices were unfair, which
3  is difficult for them to do, since under California law,
4  lenders do not owe borrowers a duty of care during the loan
5  qualification process because it is an arm's length
6  transaction.  See Perlas v. GMAC Mortg., 187 Cal.App.4th 429,
7  436 (2010).  Accordingly, plaintiffs have not presented
8  evidence to sustain a claim under the unfair prong of Section
9  17200.  Nor have they presented evidence to maintain a claim
10 under the other two Section 17200 prongs.  Defendant's motion
11 on this cause of action is therefore **GRANTED**.
12     At the hearing on this motion, plaintiffs, who had
13 received a draft of this decision before oral argument began,
14 did not specifically contest any of my rulings.  Instead,
15 plaintiffs argued for the first time that defendant's notice
16 of default did not meet the requirements of Civil Code §
17 2923.5 and suggested that the lender and its servicer may have
18 engaged in "robo-signing."  Plaintiff pointed out that
19 defendant's "California declaration" attached to the notice of
20 trustee sale, which was signed in Texas, stated that no
21 attempts were made to personally contact plaintiffs.
22 Additionally, the "Declaration of Exemption" was signed by
23 Rhonda Weston as Vice President of BAC Home Loans Servicing.
24 Six months before Weston signed this document, plaintiffs
25 claimed, she signed an Assignment of Mortgage for a home in
26 Florida as the Vice President of MERS.  I allowed plaintiffs
27 to submit supplemental briefing with supporting evidence based
28 on these newly raised issues which plaintiffs have now filed

1   and defendant has opposed.[4]

2   Defendant is correct that plaintiffs' new arguments are
3   late and are not based on any of the claims asserted in their
4   complaint.  Plaintiffs do not explain why these arguments,
5   which concern recorded documents that have been available to
6   plaintiffs for some time and were included in defendant's
7   motion for summary judgment, were not raised earlier.  In any
8   event, plaintiffs' new arguments do not raise any genuine
9   issues of fact for trial.  The notice of default was recorded
10  on August 8, 2008.  RJN, Ex. D.  Section 2923.5, however, did
11  not become operative law until September 6, 2008.  Thus, it
12  did not apply to the notice of default and defendant was not
13  required to verify that it had personally contacted
14  plaintiffs.  Moreover, the only relief afforded to plaintiffs
15  by Section 2923.5 would be a postponement in the foreclosure
16  proceedings until defendant complied with the provisions of
17  the statute.  See <u>Mabry v. Superior Court of Orange County</u>,
18  185 Cal.App.4th 208, 231-32 (2010).  Here, the notice of
19  trustee sale was not recorded until May 17, 2011.  RJN, Ex. F.
20  During this time of almost three years, there is evidence in

---

[4]   Plaintiffs request that I take judicial notice of 4 documents. Defendant opposes the request and objects to the documents. Many of defendants' objections are well taken. Plaintiffs' counsel did not properly authenticate the documents.  <u>See</u> <u>Orr v. Bank of America</u>, 285 F.3d 764, 777-778 (9th Cir. 2002).  For example, he does not explain how he knows that the documents are true and correct.  Exhibits A, B and D are replete with hearsay.  In addition, the only facts contained in plaintiffs' documents of which the Court would take judicial notice are the dates on which the documents were prepared, in as much as the factual content of the documents, with the possible exception of Exhibit C, is generally in dispute and therefore not subject to judicial notice under Rule 201(b).

the record that defendant communicated with plaintiffs regarding options to foreclosure, although it is not clear whether this communication was in person, by phone, or through correspondence. Joint Statement of Undisputed Facts at ¶¶ 23-32. Any issues that plaintiffs have with the notice of trustee sale and its "Declaration of Exemption", based on Civil Code §§ 2923.52, 2923.53, and 2923.54, are similarly misplaced. These statutes were repealed on January 1, 2011 before the notice of trustee sale was recorded.[5]

In its supplemental brief, defendant seeks attorneys' fees' as sanctions for plaintiffs' late and non-meritorious arguments. This request is **DENIED** because defendant has not complied with Local Rule 7-8(a) and 37-3 which require such requests to be filed separately and the expenses requested to be itemized.

///
///
///
///
///
///
///
///
///

---

[5] In any event, I am satisfied by Rhonda Weston's declaration that she was the Vice President of BAC Home Loans Servicing when she signed the "Declaration of Exemption." See Docket No. 67.

10

For the foregoing reasons, defendant's motion for summary judgment is **GRANTED** in its entirety.[6]

Dated: July 28, 2011

_____
Bernard Zimmerman
United States Magistrate Judge

G:\BZALL\-BZCASES\KUREK V. AMERICA'S WHOLESALE LENDER\ORDER RE SUMMARY JUDGMENT (AFTER HEARING).wpd

---

[6] Defendant objects on various grounds to a significant portion of the evidence submitted by plaintiffs in support of their opposition and supplemental briefing. Docket Nos. 61 and 66. Subject to my ruling in footnote four, these objections are **OVERRULED** as moot because even considering all of plaintiffs' evidence, I still grant defendant's motion for summary judgment.